[No. B192828. Second Dist., Div. Eight. Feb. 26, 2008.]

TAHERI LAW GROUP, Plaintiff and Appellant, v.
NEIL C. EVANS, Defendant and Respondent.

484

## COUNSEL

Law Offices of Yevgeniya G. Lisitsa and Yevgeniya G. Lisitsa for Plaintiff and Appellant.

Neil C. Evans, in pro. per., for Defendant and Respondent.

## OPINION

## COOPER, P. J.—

### SUMMARY

A lawsuit brought by a law firm alleging that another attorney improperly solicited its client was subject to the anti-SLAPP (strategic lawsuit against public participation) statute, as it arose out of the attorney's communications concerning pending litigation, and was not barred by the commercial speech exception to the statute. The plaintiff law firm failed to establish a probability of prevailing on its claim, and accordingly the trial court correctly granted the defendant attorney's special motion to strike the complaint. However, because the defendant attorney represented himself, the trial court erred in awarding him attorney fees under the anti-SLAPP statute.

### FACTUAL AND PROCEDURAL BACKGROUND

Taheri Law Group, APC, sued Attorney Neil C. Evans, asserting causes of action for intentional interference with prospective economic advantage and intentional interference with business relations. Taheri alleged that it successfully represented Alexander Sorokurs and his medical corporation (Sorokurs) in several litigation matters for some 18 months, when Sorokurs "without warning and for cause unknown" discharged Taheri while still owing Taheri more than $500,000 in fees. On the same day, Taheri received a letter from Evans, notifying Taheri that he was Sorokurs's new counsel in connection with the matters in which Taheri had been representing Sorokurs.

In its lawsuit, Taheri alleged Evans knew of the economic relationship between Taheri and Sorokurs, and induced Sorokurs to terminate his relationship with Taheri, promising "unobtainable and ethically improper litigation

objectives . . . ." Evans's promise was that he (Evans) would be able to enforce a settlement agreement to which Sorokurs was a party; Evans "without a care moved to enforce the settlement agreement, leaving the Plaintiffs [adverse parties in the settled actions] exposed to further malicious prosecution action." Evans allegedly procured the disruption of Taheri's relationship with Sorokurs "by advising [Sorokurs] to discharge [Taheri] from his duties . . . and refusing to pay for the legal services already rendered by [Taheri] . . . , by reporting as being fraudulent the credit card payments made against [Sorokurs's] credit card to pay for the costs of [Sorokurs's] matters . . . , by procuring [Sorokurs's] insolvency, and by waiving all attorney's fees earned by [Taheri] through out the course of eighteen months of litigation of [Sorokurs's] matters."

Evans brought a special motion to strike the complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] Evans asserted his actions were protected by the anti-SLAPP statute, as those actions "all took place in connection with pending litigation in which [Taheri's] interests were allegedly interfered with by [Evans] by [Evans's] filings, letters, and other communicative actions in pending litigation." Taheri could not establish a probability of prevailing on its claims, Evans argued, because Evans's actions were protected by the litigation privilege (Civ. Code, § 47, subd. (b)). Evans submitted a declaration from Sorokurs, which stated that:

—In May 2005, a global settlement was reached in the three matters in which Taheri was representing him.

—In July 2005, he was told by Taheri that the plaintiffs in the settled litigation were repudiating the settlement agreement. Sorokurs asked Taheri for written proof of the repudiation, but was never provided with proof, and was told that the litigation would have to continue.

—Because his goal was to end the litigation through the settlement agreement, Sorokurs decided to replace Taheri with new legal counsel.

—He was referred to Evans by a patient, Frank Keebler, "and contacted Mr. Evans directly. Mr. Evans did not solicit me, I pursued Mr. Evans. After meeting with Mr. Evans on or about November 1, 2005, at my insistence, I decided to hire Mr. Evans in order to enforce the Settlement Agreement and to otherwise protect my legal interests . . . ."

Evans also submitted his own declaration, stating that he was contacted by Sorokurs. Evans's declaration also stated that he read the Sorokurs settlement

---

[1] All statutory citations are to the Code of Civil Procedure unless otherwise stated.

agreement on November 1, 2005; it appeared on its face to be a fully enforceable agreement resolving Sorokurs's involvement in the three lawsuits, and provided for binding mediation or arbitration of any dispute; Taheri did not seek to enforce the settlement, instead pursuing motions for attorney fees and costs which were not in Sorokurs's best interests; and he advised Taheri and the parties to the settlement agreement that he was seeking to enforce it, which would have the effect of nullifying attorney fee awards and cost awards to Sorokurs which had been obtained by Taheri after the settlement agreement had been reached.

On May 18, 2006, Taheri filed an ex parte application to shorten time to bring motions to compel further responses to discovery, and to continue the hearing date on the anti-SLAPP motion. The next day, Taheri filed its opposition to Evans's special motion to strike. Taheri argued that the anti-SLAPP statute was not implicated because "the gravamen of the action is client stealing," and the action had "nothing to do with [Evans's] First Amendment rights . . . ." Taheri also argued that even if the statute were applicable, the commercial speech exemption in section 425.17 would bar its application to this case. Taheri asserted it would prevail in the case, and in support of its opposition submitted a declaration from Payman Taheri. Mr. Taheri described his representation of Sorokurs, the "tentative" settlement, and the July 2005 repudiation of the settlement. He stated he "could not enforce the settlement" because "there were no essential terms," and he "explained all of this to my client Mr. Sorokurs and he understood what was going on." Mr. Taheri stated that Evans "knew of my relationship with Mr. Sorokurs, knew what a great client Mr. Sorokurs would be, took advantage, cornered Mr. Sorokurs and took that client away from me; [Evans] has personally admitted the same to me." Taheri also submitted a declaration from its attorney, consisting principally of assertions that Evans stole Taheri's client and that Evans and Sorokurs were "liars."

The trial court granted Evans's motion, finding (1) Evans had demonstrated his conduct was within the terms of the anti-SLAPP statute, "that is, privileged communications and communications in the exercise of rights of litigation in a judicial proceeding," and (2) Taheri did not introduce any evidence to establish a prima facie case for its claims. The court also awarded attorney fees of $3,560 to Evans under section 425.16, subdivision (c).

Judgment was entered on July 6, 2006, and this appeal followed.[2]

---

[2] Several motions were filed during and after appellate briefing, ruling on which was deferred. First, Evans filed a motion for judicial notice of interim and final arbitration awards in an arbitration between Taheri and Sorokurs on the $600,000-plus in attorney fees claimed by Taheri, and on Sorokurs's counterclaims for malpractice, breach of fiduciary duty, violation of conflict of interest rules, breach of contract, and fraud. (The award concluded Taheri was

## DISCUSSION

Taheri argues its complaint was not subject to the anti-SLAPP statute, and even if it were, the suit was barred by the commercial speech exception to the statute. In addition, Taheri contends the trial court erred in not continuing the hearing on the motion to permit further discovery, in overruling Taheri's evidentiary objections to the declarations of Sorokurs and Evans, and in awarding attorney fees to a propria persona defendant. We conclude the trial court's order granting Evans's special motion to strike was proper, but that the court erred in awarding attorney fees to Evans.

We briefly review the legal principles applicable to anti-SLAPP motions, and then address each of Taheri's contentions.

■ The anti-SLAPP statute is a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of First Amendment rights of petition and free speech. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713] (*Rusheen*).) In evaluating an anti-SLAPP motion, the trial court first decides whether the defendant has made a threshold showing that the challenged cause of action arises from protected activity. (*Id.* at p. 1056.) " 'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' [Citation.]" (*Ibid.*; see § 425.16, subd. (e)(2) [acts in furtherance of free speech or petition rights include "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body"].) Acts in furtherance of free speech or petition rights include "communicative conduct such as the filing, funding, and prosecution of a civil action." (*Rusheen, supra,* 37 Cal.4th at p. 1056.)

If the trial court finds the defendant has made a threshold showing that a cause of action arises from protected activity, it must then decide whether the plaintiff has demonstrated a probability of prevailing on the claim. To do so, the plaintiff must show the complaint is legally sufficient and " ' "supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." . . .' [Citation.]" (*Rusheen, supra,* 37 Cal.4th at p. 1056.)

---

entitled to a portion of its fees on a quantum meruit theory, but most of the fee claim was denied because of Taheri's breaches of ethical and fiduciary duties to Sorokurs, who was found to be the prevailing party.) Taheri opposed Evans's request for judicial notice, and later filed its own request for judicial notice (which Evans opposed) of its petition to vacate the arbitration award and of "cases in which [Evans] has appeared before this court" and the fact that Evans is an active member of the State Bar. Both requests are denied, as the documents were not before the trial court and are otherwise not relevant or necessary to a decision on the issues under appeal. Taheri's motion to strike the respondent's appendix is also denied as moot, because the appendix was returned by the clerk of the court to Evans for failure to comply with court rules.

### 1. *Taheri's causes of action arose from protected activity.*

Taheri contends its lawsuit did not arise from protected activity. According to Taheri, its lawsuit arose from Evans's conduct soliciting a client, "not what [Evans] did when he got into the case." Taheri's analysis is erroneous. Its complaint plainly shows it arose from Evans's communications with Sorokurs about pending litigation, and from Evans's conduct in enforcing the settlement agreement on Sorokurs's behalf. The fact that some of Evans's communications took place while Taheri was Sorokurs's attorney—communications which Sorokurs says he initiated—is irrelevant to the question whether the lawsuit arises from communications "made in connection with an issue under consideration or review by a . . . judicial body . . . ." (§ 425.16, subd. (e)(2).) Taheri insists that improper solicitation of another attorney's client is not subject to the protections of either the anti-SLAPP statute or the litigation privilege. But the only authority cited for this proposition is *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624 [7 Cal.Rptr.3d 715] (*Jespersen*), in which the court held that a cause of action for legal malpractice was not subject to an anti-SLAPP motion. *Jespersen* does not assist Taheri. In *Jespersen*, the malpractice alleged consisted of the lawyers' failure to serve timely discovery responses and to comply with court orders to do so, and "did not consist of any act in furtherance of anyone's right of petition or free speech, but [the lawyers'] negligent *failure* to do so on behalf of their clients." (*Jespersen, supra*, 114 Cal.App.4th at p. 631.)

█ Here, unlike the malpractice cause of action in *Jespersen*, Taheri's causes of action arise directly from communications between Sorokurs and Evans about the pending lawsuits against Sorokurs. And, as for the litigation privilege, numerous cases have applied it to prelitigation communications (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1194–1195 [17 Cal.Rptr.2d 828, 847 P.2d 1044], citing cases), and the litigation privilege clearly "informs interpretation of the 'arising from' prong of the anti-SLAPP statute . . . ." (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770 [131 Cal.Rptr.2d 201], citation omitted; see *Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1474 [37 Cal.Rptr.3d 133] [clauses of the anti-SLAPP statute defining protected activity to include statements made before or in connection with an issue under review by a judicial body "are parallel to and coextensive with the definition of privileged communication under Civil Code section 47, subdivision (b)"].) In short, it is difficult to conjure a clearer scenario than the case before us of a lawsuit arising from protected activity.

2. *Taheri's causes of action are not excepted from the anti-SLAPP statute under section 425.17.*

Taheri asserts its causes of action are not subject to the anti-SLAPP statute because the conduct on which they are based falls within the commercial speech exemption to the statute, as defined in section 425.17, subdivision (c). Again, we disagree.

■ The anti-SLAPP statute does not apply to causes of action arising from specified claims against business entities involving commercial speech or conduct. (§ 425.17, subd. (c).) The exemption covers "any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person . . . ," if two conditions exist: (1) the statement or conduct consists of representations of fact about the business operations, goods or services of the person or a business competitor, and "is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services," or in the course of delivering the goods or services, and (2) "[t]he intended audience is an actual or potential buyer or customer . . . ." (§ 425.17, subd. (c)(1), (2).)

■ If we read the statutory exemption literally, the conduct Taheri alleges could arguably be viewed as falling within its scope. Thus, a lawyer may be said to be "primarily engaged in the business of selling or leasing goods or services" (§ 425.17, subd. (c)), because providing legal advice and representation is a service. Taheri's causes of action arise from a "statement or conduct by" Evans: Evans is alleged to have advised Sorokurs to discharge Taheri and to refuse to pay for its services; reported as fraudulent payments made with Sorokurs's credit card for the costs of Sorokurs's matters; and waived attorney fees earned by Taheri in litigating Sorokurs's matters. The two statutory conditions for application of the exemption also appear to be met. Evans's alleged conduct "consists of representations of fact about . . . a business competitor's [Taheri's] . . . services, made for the purpose of obtaining . . . sales . . . of . . . [Evans's] . . . services"—or, alternatively, the statement or conduct was "made in the course of delivering [Evans's] . . . services." (§ 425.17, subd. (c)(1).) And, Evans's "intended audience" was Sorokurs, "an actual or potential buyer or customer . . . ." (§ 425.17, subd. (c)(2).) Nonetheless, we conclude that a cause of action arising from a lawyer's conduct, when the conduct includes advice to a prospective client on pending litigation, does not fall within the statutory exemption to the anti-SLAPP statute. Any other conclusion would be inconsistent with the intent of the Legislature when it passed section 425.17, and would conflict with the client's fundamental right of access to the courts, which necessarily includes the right to be represented by the attorney of his or her choice.

First, the legislative history of the commercial speech exemption to the anti-SLAPP statute confirms the Legislature's intent to except from anti-SLAPP coverage disputes that are purely commercial. (See *Brill Media Co., LLC v. TCW Group, Inc.* (2005) 132 Cal.App.4th 324, 342 [33 Cal.Rptr.3d 371] [§ 425.17 "was intended to apply to commercial disputes such as the one before us"]; *id.* at pp. 347–348 (dis. opn. of Mosk, J.) ["[t]he purpose of the statute appears to have been to immunize comparative advertising by retailers from the special motion to strike statute"]; Sen. Com. on Judiciary, Rep. on Sen. Bill No. 515 (2003–2004 Reg. Sess.) as amended May 1, 2003, p. 8 [bill "would make SLAPP motion[s] inapplicable to cases against a business where [the] cause of action arises from the business's commercial speech or activity"]; see *id.* at p. 4 ["[t]he Consumer Attorneys of California . . . , sponsors of SB 515, assert that SB 515 is needed to stop corporate abuse of the statute"].) A dispute involving a lawyer's advice to a prospective client on pending litigation, however, while it may include an element of commerce or commercial speech, is fundamentally different from the "commercial disputes" the Legislature intended to exempt from the anti-SLAPP statute. The substance of the "statement or conduct" from which Taheri's causes of action arise constituted much more than "commercial speech"; the conduct was in essence advice by a lawyer on a pending legal matter. Because that is so, the alleged conduct clearly does not fall within the intendment of the statutory exemption. Indeed, the activity alleged is the very sort of activity the anti-SLAPP statute is designed to cover.

■ Second, construing the commercial speech exemption to encompass a cause of action arising from advice given by a lawyer on a pending legal matter would serve to thwart the client's fundamental right of access to the courts, and specifically to the lawyer of his choice. A litigant's right to " 'the utmost freedom of access to the courts' " is too well recognized to require discussion (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 [63 Cal.Rptr.3d 398, 163 P.3d 89]), and the "important right to counsel of one's choice" is likewise well established. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 [86 Cal.Rptr.2d 816, 980 P.2d 371]; see *Collins v. State of California* (2004) 121 Cal.App.4th 1112, 1125 [18 Cal.Rptr.3d 112].) The client's right to receive legal advice relating to his representation, and to change lawyers if he chooses, would be thwarted if we were to construe the commercial speech exemption to apply to lawyers providing legal advice, even if that advice includes an element of commercial speech.

To be clear, we are not holding that lawyers are categorically excluded from the commercial speech exemption to the anti-SLAPP statute. Like proprietors of other commercial enterprises, the lawyer sells his services to prospective "buyer[s] or customer[s]." (§ 425.17, subd. (c)(2).) It is also clear that lawyers engage in "commercial speech" when they advertise their

services. (*Leoni v. State Bar* (1985) 39 Cal.3d 609, 614, 627 [217 Cal.Rptr. 423, 704 P.2d 183] [analyzing as commercial speech an attorney's "massive advertising campaign" in the form of personalized mailings to individuals named as defendants in pending lawsuits].) Consequently, we can envisage circumstances—such as a "massive advertising campaign" divorced from individualized legal advice—under which the commercial speech exemption to the anti-SLAPP statute conceivably might apply to a lawyer's conduct. However, this is not such a case. As the trial court observed, this is not a case where Evans "sent out a bunch of mailers or a bunch of cold calls trying to get new clients. . . . [T]here is no evidence of any solicitation by mail or telephone or other media . . . ." To the contrary, this is a case in which legal advice to a specific client on a pending matter has occurred contemporaneously with the alleged solicitation of the client. It is in these circumstances that the commercial speech exemption may not be applied to a lawyer's conduct.

In sum, Evans was advising a prospective client on pending litigation, and that advice included recommending Taheri's discharge and related actions. This was not a "commercial dispute" between competing retailers of the sort the Legislature had in mind when it enacted the commercial speech exemption to the anti-SLAPP statute. Under these circumstances, and because of the fundamental right of a client to choose and change his legal representation, we conclude the commercial speech exemption from the anti-SLAPP statute may not be applied to the lawyer's activity.

3. *Taheri did not demonstrate a probability of prevailing on its claims, nor did the trial court err in its rulings on Taheri's discovery motion and evidentiary objections.*

As the trial court stated, Taheri did not introduce any evidence establishing a prima facie case for its claims, and Taheri does not expressly contend otherwise. Taheri complains, however, that the trial court (1) should have granted its ex parte application to shorten time to bring motions to compel further responses to discovery, so that it could prove its prima facie case, and (2) erred in overruling its objections to the declarations supporting Evans's motion to strike. We see no error.

The trial court previously granted a motion by Taheri to lift the automatic discovery stay, and ordered Evans to respond to Taheri's discovery. Evans did so, but many of the responses were objections based on attorney-client privilege or attorney work product privilege. The trial court denied Taheri's ensuing ex parte motion, reasoning (as Taheri observes) that the privileges were properly invoked. Taheri now argues that the discovery questions "did

not go to anything confidential" and that the privileges were waived when Evans and Sorokurs submitted declarations in support of Evans's special motion to strike.

As to the waiver point, nothing in the declarations discloses any part of any communication between Evans and Sorokurs, so there was no waiver. (Evid. Code, § 912.) As to the claim that its discovery questions "did not go to anything confidential," it is likewise without merit. On appeal, Taheri specifically identifies only one interrogatory in connection with this claim, and that interrogatory asked Evans to identify each person with knowledge that Evans did not induce Sorokurs to terminate the contractual relationship between Taheri and Sorokurs. However, Taheri did not identify this or any other specific discovery item to the trial court in its motion to shorten time, merely arguing that it needed discovery "to make its prima facie case against [Evans] as this case is about collusion and conspiracy between Defendant Evans and Mr. Sorokurs to rob [Taheri] of the fruits of his labor . . . ." At the hearing, Taheri complained that Frank Keebler—whom Sorokurs said was a patient of his who referred him to Evans—did not submit a declaration, and on appeal Taheri argues it needed discovery to make a case Keebler was "a capper for an unethical lawyer." Given the entirely speculative nature of the latter claim, and the state of the record and arguments before the trial court, we can find no abuse of discretion in denying Taheri's motion.

Finally, Taheri claims its objections to the declarations of Evans and Sorokurs, based on lack of personal knowledge, were erroneously overruled, apparently because the declarations did not expressly state they were based on the declarant's personal knowledge. Since each declaration relates only to what the declarant did or said or what was said to him, we find Taheri's objection mystifying. The trial court's ruling was plainly correct.

### 4. *The trial court erred in awarding attorney fees to Evans.*

■ Under section 425.16, subdivision (c), a defendant who prevails on a special motion to strike "shall be entitled to recover his or her attorney's fees and costs." The trial court awarded Evans $3,560 in attorney fees. Taheri contends attorney fees are not recoverable by a prevailing defendant who represents himself, citing *Trope v. Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259] and *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400 [103 Cal.Rptr.2d 174]. On this point, to which Evans did not respond in his brief, we agree with Taheri.

In *Trope v. Katz*, the Supreme Court granted review to resolve the question "whether an attorney who successfully represents himself in litigation may recover attorney fees when such fees are provided for by contract or statute."

(*Trope v. Katz, supra*, 11 Cal.4th at p. 278.) The answer was "no," where the attorney sought an award under Civil Code section 1717. Specifically, the court held that "an attorney who chooses to litigate in propria persona and therefore does not pay or become liable to pay consideration in exchange for legal representation cannot recover 'reasonable attorney's fees' under [Civil Code] section 1717 as compensation for the time and effort he expends on his own behalf or for the professional business opportunities he forgoes as a result of his decision." (11 Cal.4th at p. 292.) The court's extensive discussion included the observations that "the usual and ordinary meaning of the words 'reasonable attorney's fees' is the consideration that a litigant pays or becomes liable to pay in exchange for legal representation," and that construing the statute to permit an attorney litigant to obtain attorney fees "would in effect create two separate classes of pro se litigants—those who are attorneys and those who are not—and grant different rights and remedies to each." (*Id.* at pp. 282, 277.)

Since *Trope*, the Supreme Court and other courts have made clear that *Trope* did not preclude the recovery of attorney fees in other circumstances where the litigant did not actually incur fees, such as for work performed by in-house counsel, pro bono work, and the like. But a necessary predicate for obtaining fees is the existence of an attorney-client relationship. (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1092 [95 Cal.Rptr.2d 198, 997 P.2d 511] ["by definition, the term 'attorney fees' implies the existence of an attorney-client relationship, i.e., a party receiving professional services from a lawyer"]; *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 524 [37 Cal.Rptr.3d 381] (*Ramona Unified*) ["[w]here an attorney-client relationship exists, the courts uniformly allow for the recovery of attorney fees under Civil Code section 1717"].)

The same principle applies to attorney fees under the anti-SLAPP statute. (*Ramona Unified, supra*, 135 Cal.App.4th at p. 524 ["[c]ases that have allowed the recovery of attorney fees under the anti-SLAPP statute are similarly marked by the existence of an attorney-client relationship"]; see also *Dowling v. Zimmerman, supra*, 85 Cal.App.4th at p. 1425.) In short, "the commonly understood definition of attorney fees applies with equal force to section 425.16 and a prevailing defendant is entitled to recover attorney fees if represented by counsel." (*Ramona Unified, supra*, 135 Cal.App.4th at p. 524.) Under *Trope* and its progeny, it necessarily follows that a party, whether or not he is an attorney, who is not represented by counsel and who litigates an anti-SLAPP motion on his own behalf may not recover attorney fees under the statute.

## DISPOSITION

The judgment is reversed to the extent it awards attorney fees to Neil C. Evans, and is otherwise affirmed. Evans is to recover his costs on appeal.

Rubin, J., and Flier, J., concurred.