Filed 5/21/13  San Diego Fire Victims Lawyers v. Community Assistance Recovery CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SAN DIEGO FIRE VICTIMS LAWYERS et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> COMMUNITY ASSISTANCE RECOVERY, INC., et al., <br><br> Defendants and Appellants. | D061182 <br><br><br> (Super. Ct. No. 37-2011-91440-CU-BT-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Reversed.


Connors & Associates, G. Patrick Connors III, for Defendants and Appellants.

Dabney Finch for Plaintiffs and Respondents.

Community Assisting Recovery, Inc. (CARe)[1] and George Kehrer appeal from the trial court's order denying their special motion to strike on the ground that this action is a strategic lawsuit against public participation under Code of Civil Procedure section 425.16 (commonly known as the anti-SLAPP statute, hereafter section 425.16). As we will explain, we conclude that the trial court erred in denying the special motion to strike, and we therefore reverse.

I

FACTUAL AND PROCEDURAL BACKGROUND

CARe is a nonprofit corporation that provides assistance to disaster victims. Kehrer is CARe's executive director. According to Kehrer, "CARe's mission is to help rebuild disaster damaged communities by providing the most up-to-date information regarding the dynamic recovery issues as determined by the needs of the impacted area. Through free classes at schools, churches and similar donated meeting spaces, and continual email and post card updates, CARe responds to the immediate information needs of residents who have requested its information at CARe meetings or through the CARe website."

CARe provided assistance to victims of the 2007 wildfires in San Diego County, obtaining funding from local foundations to support its work. The 2007 San Diego wildfires gave rise to litigation against San Diego Gas & Electric Company (SDG&E),

---

[1] CARe was erroneously sued as Community Assistance Recovery, Inc., rather than Community Assisting Recovery, Inc.

with numerous lawyers involved in the litigation on behalf of different fire victim clients (the SDG&E Litigation).

One of the group of lawyers involved in the SDG&E Litigation was comprised of Terry Singleton, Tom Tosdal and Mitchell S. Wagner, who, in different combinations, did business under the name San Diego Fire Victims Lawyers (SDFVL) or San Diego Fire Lawyers (SDFL).[2] Another law firm involved in the SDG&E Litigation was Engstrom, Lipscomb & Lack, including attorney Brian Heffernan.

As part of its communications with victims of the 2007 San Diego wildfires, CARe held informational meetings, which included presentations by attorneys involved in the SDG&E Litigation, and sent out newsletters containing information about the litigation.

In May 2011, SDFVL, SDFL, Singleton, Tosdal and Wagner, along with law firms Hurst & Hurst and the Law Offices of Robert Jackson (collectively, Plaintiffs) filed suit against CARe and Kehrer under the unfair competition law (UCL) pursuant to Business and Professions Code section 17200 et seq. The operative first amended complaint (the complaint) alleges that, in the guise of providing the 2007 San Diego wildfire victims with information about the SDG&E Litigation, CARe and Kehrer were actually soliciting business for Heffernan in exchange for a referral fee or payment. Specifically, the complaint alleges that Kehrer would conduct "public and private

---

[2] Specifically, the allegation is that Singleton, Tosdal and Wagner collectively did business as SDFVL; and Singleton and Wagner collectively did business as SDFL.

meetings in which [he] would endorse[] and recommend[] to those in attendance that they hire Attorney Heffernan or his Law Firm of Engstrom, Lipscomb & Lack," and that CARe sent written communications to 2007 San Diego wildfire victims recommending Heffernan's services and setting forth testimonials from satisfied clients of Heffernan. The written communications at issue are attached as exhibits to the complaint.

One exhibit to the complaint is a postcard mailed to victims of the 2007 San Diego wildfires, with the heading "SDG&E Lawsuit Update, Year 4." The postcard stated:

> "As we head into the 4th year of the SDG&E lawsuit, CARe has seen progress. While two large groups represented by attorney Brian Heffernan have received sizable awards, many of you are still in litigation with insufficient funds to rebuild your home and lives. []Large Guejito, Witch Creek and Rice Awards were recently received by a second group of fire victims represented by attorney Brian Heffernan. Many reported they had only joined the lawsuit a few months ago and were relieved with how quickly and effortlessly their claims won awards — with no depositions, or appearances at mediation or trial AND at minimal costs! []About 350 cases are completed — the majority of these cases are the groups with attorney Brian Heffernan. []An SDG&E award significantly changes lives! While some plaintiffs with other attorneys have sporadically settled, homeowners in the large groups are the only fire victims CARe is aware to consistently achieve significant awards from SDG&E. Getting your SDG&E claim fully resolved — seamlessly and with minimal costs — is the *true indicator* of what is really occurring 'behind the scenes.'" (Some capitalization altered.)

The remaining space on the back of the postcard — as well as some of the space on the front of the card — contained comments from fire victims praising the positive litigation results they had obtained. Approximately half of the comments mentioned Heffernan by name:

> "'The best decision I ever made was to switch attorneys. A few months ago, Brian Heffernan got me more than double the amount of what my former attorneys said I could possibly get.'"

4

"'My settlement is remarkable — It changed our family's lives. Mr. Heffernan's costs were almost nothing, far less than 1%.'"

"'I appreciate SDG&E's fantastic settlement and Brian Heffernan's high level of professionalism.'"

"'The SDG&E award saved my life! And it only took a few months after I changed attorneys to Mr. Heffernan and he got me a great settlement.'"

Another exhibit to the complaint is a page-long document prepared by CARe, with the title "SDG&E Litigation Update[:] What is _Really_ Going on with the SDG&E Litigation?" The document, which the complaint alleges was distributed electronically, set forth statistics about the lawsuits being handled by the lawyers involved in the SDG&E Litigation as of April and May 2011. Among other things, the document showed that out of a total 3,165 cases, 820 were closed and 2,345 were open. It set forth statistics, derived from SDFVL's court filings, showing that as of April 4, 2011, 190 of SDFVL's cases had been mediated but not settled, and 396 of SDFVL's cases had not been submitted to mediation. The document contained a chart showing the percentage of cases completed for the different lawyers involved in the SDG&E Litigation. According to the chart, Heffernan was the only attorney who had completed 100 percent of his cases (368 out of 368). SDFVL had completed 34 percent of their 755 cases. In addition, the document stated that ". . . Heffernan clients are reporting substantial case resolutions that reflect sizable compensation for _all_ damage components alleged in the SDG&E litigation."

A final exhibit to the complaint is an e-mail that Kehrer sent to a single individual, identified only as "Merilee," apparently as a reply to her "update on the Poway 2007 fire

5

recovery." In the course of the e-mail, Kehrer mentioned that Heffernan is "the attorney who has received accolades from everyone who has contacted CARe," and he provided Heffernan's contact information, explaining that "Heffernan is the ONLY attorney who deliberately avoided the mediation process and developed a procedure that got people substantial money quickly and without the mediation expenses and headaches."

The complaint contains three causes of action, each of which alleges unfair business practices under Business and Professions Code section 17200 based on different theories.

The first cause of action alleges a violation of the UCL based on "false, misleading, or deceptive advertising." Specifically, the first cause of action alleges that the written communications attached as exhibits to the complaint constituted false and deceptive advertising on behalf of Heffernan that violated certain statutory provisions governing legal advertising (Bus. & Prof. Code, § 6157 et seq.). Those provisions include that an advertisement (1) "shall disclose any business relationship, past or present, between the member [of the State Bar] and the person paying for the advertisement" (*id*., § 6157.3); (2) shall not contain a "guarantee or warranty regarding the outcome of a legal matter as a result of representation by the member" (*id*., § 6157.2, subd. (a)); (3) shall not state "that the member featured in the advertisement can generally obtain immediate cash or quick settlements" (*id*., § 6157.2, subd. (b)); (4) if made by electronic media, must as a whole "not be false, misleading, or deceptive," must be "factually substantiated" and must contain certain disclaimers when the advertisement portrays a result in a particular case or cases (*id*., §§ 6158, 6158.3).

6

The second cause of action arises under the UCL based on the theory that CARe and Kehrer were acting as a lawyer referral service without complying with the legal requirements for such a service in violation of Business and Professions Code section 6155.[3] As alleged in the second cause of action, CARe and Kehrer acted as a lawyer referral service because they made the positive statements about Heffernan identified in the complaint in exchange for payment from Heffernan.

The complaint's third cause of action alleges a violation of the UCL on the basis that CARe and Kehrer unlawfully solicited business for Heffernan in violation of Business and Professions Code sections 6151, subdivision (a) through 6154, subdivision (b).[4]

---

[3]    As established in Business and Professions Code section 6155, to operate lawfully, an attorney referral service must register with the State Bar of California and meet certain minimum standards.

[4]    Under Business and Professions Code section 6152, subdivision (a)(1), it is unlawful for "[a]ny person, in an individual capacity or in a capacity as a public or private employee, or for any firm, corporation, partnership or association to act as a runner or capper for any attorneys or to solicit any business for any attorneys in and about the state prisons, county jails, city jails, city prisons, or other places of detention of persons, city receiving hospitals, city and county receiving hospitals, county hospitals, superior courts, or in any public institution or in any public place or upon any public street or highway or in and about private hospitals, sanitariums or in and about any private institution or upon private property of any character whatsoever."  A runner or capper is "any person, firm, association or corporation acting for consideration in any manner or in any capacity as an agent for an attorney at law or law firm, whether the attorney or any member of the law firm is admitted in California or any other jurisdiction, in the solicitation or procurement of business for the attorney at law or law firm."  (*Id*., § 6151, subd. (a).)

7

CARe and Kehrer filed a special motion to strike the complaint under the anti-SLAPP statute. (§ 425.16.) The special motion to strike argued that the complaint arose from activity protected by the anti-SLAPP statute because it arose from "any written or oral statements or writing made in connection with an issue under consideration or review by a . . . judicial body" (Code Civ. Proc., § 425.16, subd. (e)(2)) in that each cause of action was based on CARe and Kehrer's statements about the performance of counsel in the pending SDG&E Litigation. The trial court denied the motion. CARe and Kehrer filed a notice of appeal. (*Id*., § 904.1, subd. (a)(13).)

## II.

## DISCUSSION

A.    *Standard of Review*

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

B.    *Applicable Legal Standards*

The anti-SLAPP statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public

8

issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "The analysis of an anti-SLAPP motion thus involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.'" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820 (*Oasis West*).)

Section 425.16, subdivision (e) specifies the type of activity protected by the anti-SLAPP statute. As relevant here, an "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: . . . (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (*Ibid*.) Based on this provision, "'statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest.'" (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1261 (*Neville*).)

"[T]he statutory phrase 'cause of action . . . arising from' means . . . that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in

9

furtherance of the right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*Cotati*).) " 'In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' " (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.) We inquire whether the activity giving rise to the complaint constitutes " '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim[s]' " asserted in the lawsuit. (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.)

C.      *The Complaint Arose from Protected Activity*

Turning to the first prong of the anti-SLAPP analysis, CARe and Kehrer argue that because the complaint is based on statements about the performance of counsel in the SDG&E Litigation, the complaint arises from "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).)

"[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation," even though it is not made in the court proceeding itself. (*Neville*, *supra*, 160 Cal.App.4th at p. 1266.) Thus, for example as relevant here, a litigation update sent by a homeowner's association to inform members of the association of pending litigation was a statement made in connection with a judicial proceeding within the meaning of the anti-SLAPP statute. (*Healy v. Tuscany Hills Landscape &*

10

*Recreation Corp.* (2006) 137 Cal.App.4th 1, 5-6.) Similarly, a company's e-mail to a small group of customers, informing them of the court's rulings and favorable imposition of sanctions in litigation against the company's competitor fell within the scope of protected activity in section 425.16, subdivision (e)(2) because it was " 'in connection with an issue under consideration or review by a . . . judicial body' " in connection with litigation. (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1050-1051, 1055-1056 (*Staff Pro*).) Equally relevant here, a complaint alleging improper solicitation of another attorney's client in a pending litigation by promising a more favorable outcome in the litigation is subject to the protections of the anti-SLAPP statute because such claims arise from statements made in connection with issues before a judicial body. (*Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 489 (*Taheri*).) Specifically, the complaint in *Taheri* arose from activity protected under the anti-SLAPP statute in that it alleged that the defendant improperly solicited the plaintiff's client by "promising 'unobtainable and ethically improper litigation objectives' " in a pending litigation. (*Taheri*, at pp. 485-486.) *Taheri* stated that because the complaint's claims arose "directly from communications between [the soliciting attorney and the potential client] about the pending lawsuits against [the client]," it was "difficult to conjure a clearer scenario than the case before us of a lawsuit arising from protected activity." (*Id.* at p. 489.)

Here, the claims against CARe and Kehrer fall squarely within this line of case law. First, like the attempted client solicitation in *Taheri*, *supra*, 160 Cal.App.4th 482, the complaint's claims arise out of statements that were allegedly made to solicit clients

11

who were already represented by other lawyers in a pending litigation by making promises about a more favorable outcome in the litigation and criticizing current counsel's performance. Second, like the litigation updates in *Healy, supra,* 137 Cal.App.4th 1, and *Staff Pro*, *supra*, 152 Cal.App.4th 1043, the complaint bases its claims against CARe and Kehrer on statements providing updates about pending lawsuits, namely the SDG&E Litigation, and, as required, those statements — made to the fire victims — were directed at "persons having some interest in the litigation" (*Neville*, *supra*, 160 Cal.App.4th at p. 1266). The complaint in the instant action therefore arises from protected activity because it arises from statements "made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(2).)[5]

Plaintiffs present two alternative arguments as to why the complaint does not arise from protected activity. As we will explain, neither has merit.

---

[5] Plaintiffs contend that a statement is "made in connection with an issue under consideration or review by a . . . judicial body" within the meaning of the anti-SLAPP statute (§ 425.16, subd. (e)(2)) only if the statements concern the "issues being litigated" and "allegations of liability." As we understand the argument, Plaintiffs contend that to constitute protected activity, the statements must comment on the legal issues presented in the litigation or the relative merits of the parties' litigation positions. However, the statutory language does not support such a restrictive reading as it requires only that the statement be "in connection with" an issue in litigation. (*Ibid.*) Further, *Taheri*, *supra*, 160 Cal.App.4th 482, undermines Plaintiffs' position because statements in that case were protected activity even though they involved solicitation of a client through promises of a more favorable outcome under a different attorney.

First, Plaintiffs argue that although the complaint identifies CARe and Kehrer's statements about the SDG&E Litigation, the complaint does not *arise from* those statements.

To meet the requirement that a cause of action arise from protected activity, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*Cotati*, *supra*, 29 Cal.4th at p. 78.) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability — and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.) Here, the exclusive activity identified as the basis for the complaint's three causes is CARe and Kehrer's acts of making statements praising Heffernan's result in the SDG&E Litigation. As we have explained, that activity falls squarely under the anti-SLAPP statute because it meets the definition of protected activity as set forth in section 425.16, subdivision (e)(2).

Plaintiffs attempt to *recharacterize* the activity on which the complaint is based, contending that it is based *not* on CARe and Kehrer's statements about Heffernan but *instead* on the act of "funneling clients away from one attorney group to another law firm." The trial court took a similar view of the case, stating in its ruling that the gravamen of the complaint was "an alleged scheme to steal clients away from [P]laintiffs," rather than "defendants' speech."

This view of the case improperly confuses the *activity* on which the complaint is based (making statements about the SDG&E Litigation favorable to Heffernan) with the

13

alleged *motive* for that activity (stealing clients on behalf of Heffernan).  Case law is clear that an analysis under the anti-SLAPP statute focuses on the activity itself, not the motive.  "[C]auses of action do not arise from motives; they arise from acts."  (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1186.)  The anti-SLAPP statute "applies to claims 'based on' or 'arising from' statements or writings made in connection with protected speech or petitioning activities, regardless of any motive the defendant may have had in undertaking its activities, or the motive the plaintiff may be ascribing to the defendant's activities."  (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 269.)  Thus, "the defendant's purported motive in undertaking speech and petitioning activities is irrelevant in determining whether the plaintiff's cause of action is based on those activities."  (*Id*. at p. 271.)  In this case, the complaint's three causes of action are based on the statements that CARe and Kehrer made about the performance of the attorneys in the SDG&E Litigation.  It is irrelevant to our analysis whether those statements were made as part of a scheme to steal clients.

Second, Plaintiffs argue that the activity forming the basis of the complaint is not protected by the anti-SLAPP statute because it is "illegal."  Specifically, Plaintiffs point to case law establishing that only a *valid* exercise of constitutional rights are protected by the anti-SLAPP statute, which means that illegal acts are excluded from protection.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 321 (*Flatley*) ["the basic purpose of the anti-SLAPP statute [is] to prevent the chilling of 'the *valid* exercise of the constitutional rights of freedom of speech and petition for the redress of grievances' 'through abuse of the judicial process,'" italics added].)  Plaintiffs argue that because they have alleged that

14

CARe and Kehrer acted illegally by purportedly soliciting clients for Heffernan, the anti-SLAPP statute does not apply. We disagree.

Illegal activity will bar the protection of the anti-SLAPP statute only when "the defendant *concedes*, or *the evidence conclusively establishes*, that the assertedly protected speech or petition activity was illegal as a matter of law." (*Flatley*, *supra*, 39 Cal.4th at p. 320, italics added.) "[T]he showing required to establish conduct illegal as a matter of law—either through defendant's *concession* or by *uncontroverted and conclusive evidence*—is *not* the same showing as the plaintiff's second prong showing of probability of prevailing." (*Ibid*., italics added.)

The exception to the anti-SLAPP statute for activity illegal as a matter of law does not apply here because the complaint does nothing more than *allege* improper activity by CARe and Kehrer, and the facts are heavily disputed. As we have explained, the illegality exception applies only when the facts that would establish improper activity are *uncontroverted* or illegal activity is *conceded*. (*Flatley*, *supra*, 39 Cal.4th at p. 320.) CARe and Kehrer strongly deny that they had any financial relationship with Heffernan or were acting to solicit business on his behalf, and they have submitted evidence, which if credited by the jury, would support a finding that that none of CARe's income came from Heffernan. This is simply not a case where the defendant has engaged in conduct that is either concededly or indisputably illegal as matter of law. On the contrary, the legality of CARe and Kehrer's conduct is an issue that is in serious dispute.

In sum, CARe and Kehrer have met their burden to make a threshold showing that each of the causes of action in the complaint arises from activity protected under the anti-

SLAPP statute, and they have accordingly satisfied their burden on the first prong of the anti-SLAPP analysis.

D.     *On the Second Prong of the Anti-SLAPP Analysis, Plaintiffs Did Not Demonstrate a Probability of Prevailing*

Having determined that CARe and Kehrer satisfied their burden on the first prong on the anti-SLAPP analysis, we now turn to the second prong.

"To satisfy the second prong, 'a plaintiff responding to an anti-SLAPP motion must "'state[] and substantiate[] a legally sufficient claim.'"  [Citation.]  Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'"  (*Oasis West, supra,* 51 Cal.4th at p. 820.)  In short, a plaintiff must "'demonstrate[] a probability of prevailing on the claim.'"  (*Ibid.*)

CARe and Kehrer contend that Plaintiffs have not demonstrated a probability of prevailing on their claims — each of which is asserted under the UCL pursuant to Business and Professions Code section 17200 — because they have submitted no evidence to satisfy the standing requirements for bringing a claim under the UCL.  As we will explain, we agree.

A private action for relief under the UCL can be brought only "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  (Bus. & Prof. Code, § 17204.)  Based on this provision, our Supreme Court has established that to have standing in an action under the UCL, a plaintiff "must

16

demonstrate some form of economic injury." (*Kwikset Corp. v. Superior Court* (2011) 51

Cal.4th 310, 323 (*Kwikset*).) In a UCL action, "'each element [of standing] must be

supported in the same way as any other matter on which the plaintiff bears the burden of

proof, *i.e.*, with the manner and degree of evidence required at the successive stages of

the litigation.'" (*Id.* at p. 327.)[6]

When seeking to meet its burden for the second prong of the anti-SLAPP analysis,

"a plaintiff opposing an anti-SLAPP motion cannot rely on allegations in the complaint,

but must set forth evidence that would be admissible at trial." (*Overstock.com, Inc. v.

Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699.) Therefore, to meet its burden

to demonstrate a probability of prevailing on the merits in an action brought under the

UCL, a plaintiff opposing an anti-SLAPP motion must submit admissible evidence to

establish standing by showing that it suffered injury in fact and lost money or property as

a result of the unfair competition. (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th

664, 690 [in analysis under the second prong of the anti-SLAPP statute, concluding that

"[p]laintiffs' UCL claim . . . fails because they have not demonstrated they 'suffered

injury in fact and [have] lost money or property as a result of the unfair competition'"].)

---

6       The standing requirement exists in a UCL action regardless of whether the
plaintiff is seeking a type of relief other than restitution. (*Kwikset, supra,* 51 Cal.4th at
p. 337.) Further, we emphasize that although Plaintiffs cite other statutes as part of their
UCL claims in an attempt to establish unfair and illegal business practices, their causes of
action are brought exclusively under the UCL, which includes a standing requirement,
regardless of whether the underlying statutes Plaintiffs cite contain such a requirement.

17

In this case, the complaint alleges that Plaintiffs suffered economic injury due to CARe and Kehrer's purported solicitation of clients on behalf of Heffernan. According to the complaint, the purported unlawful solicitation "result[ed] in Plaintiffs' suffering injury and lost money and property, including loss of new Fire Victim clients, loss of actual clients, loss of good will of current clients and the incurring of additional costs." However, Plaintiffs submitted *no evidence* to support those allegations when opposing the special motion to strike. Despite Plaintiffs' lengthy evidentiary submissions for their opposition to the special motion to strike, and despite Plaintiffs' lack of economic injury being raised by CARe and Kehrer as one of the grounds for their motion, Plaintiffs are unable to point to any evidence supporting the complaint's allegations that they lost money or property as a result of CARe and Kehrer's alleged wrongdoing. Therefore, Plaintiffs have not demonstrated the standing necessary to pursue and prevail on any of the causes of action in the complaint, all of which are brought under the UCL. Plaintiffs accordingly have not met their burden under the second prong of the anti-SLAPP analysis to demonstrate a probability of prevailing on their claims.

DISPOSITION

The order denying the special motion to strike is reversed, and the trial court is directed to enter a new order granting the motion and to entertain a motion for fees and costs pursuant to section 425.16, subdivision (c)(1). Appellants are awarded costs on appeal.

_____
                                                                IRION, J.

WE CONCUR:


_____
            McCONNELL, P. J.


_____
            BENKE, J.