Filed 10/30/14  Cotton v. Cotton CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARIE COTTON,<br><br>        Plaintiff, Cross-defendant and Appellant<br><br>v.<br><br>SOUL COTTON et al.,<br><br>        Defendants, Cross-complainants and Respondents. | A139072<br><br>(Sonoma County<br>Super. Ct. No. SCV252068) |

Following the death of her husband, Marie Cotton sued her stepson, Soul Cotton, for, among other things, unfair business practices regarding the family-run automotive body repair shop.[1]  Soul, together with co-workers, Michael Gonzales, Jay Hillard, and Duane Mertle (cross-complainants), countersued Marie for various Labor Code violations, among other causes of action.  Soul and his co-workers alleged in an amended cross-complaint that Marie had (1) threatened to prevent Gonzales from retrieving his personal property and threatened to take his and his parents' money unless he changed his position in the underlying lawsuit; and (2) unlawfully took possession of and destroyed personal property belonging to Soul and Gonzales.  Cross-complainants alleged that Marie's demand constituted intimidation and threats (Civ. Code, § 52.1, subd. (b)(3) [ninth cause of action]) and that her unlawful possession and destruction of their personal

---

[1]     We shall refer to members of the Cotton family by their first names for purposes of clarity and intend no disrespect.

1

property constituted conversion (Civ. Code, §§ 1965, 1993.03; Code Civ. Proc., § 1174, subd. (e) [tenth cause of action]). Marie moved to strike the ninth and tenth causes of action in the cross-complaint. She contended that the ninth and tenth causes of action were based upon protected activities under the anti-SLAPP statute (Code Civ. Proc.,[2] § 425.16) and that cross-complainants could not establish a probability of prevailing because Marie's communications were subject to the litigation privilege of Civil Code section 47, subdivision (b). The trial court denied Marie's motion.

Marie appeals the denial of the anti-SLAPP motion. She contends the special motion to strike should have been granted because the ninth and tenth causes of action are based upon her constitutionally protected activities in connection with pending litigation and are subject to the litigation privilege (Civ. Code, § 47, subd. (b)).

Finding that the ninth and tenth causes of action arise from protected activity and that cross-complainants have not established a probability of prevailing on the merits, we reverse.

## I. BACKGROUND

### A.    *The Complaint*

Marie and her late husband, John Cotton, owned and operated an automotive body repair shop known as Coach Kraft Body Shop (CKBS). CKBS was located on Marie and John's property in Sonoma County. John's adult son, Soul and Soul's son, Cody, lived in a trailer on that property. John died on September 21, 2011. Marie filed suit against Soul on July 27, 2012, alleging five causes of action against Soul: unfair business practices; intentional interference with economic relations; negligence; conversion; and trespass. The gist of the complaint was that following the death of his father, Soul, operating through his own business entity, Coach Kraft Autobody (CKA), held himself out as the owner of CKBS to service providers, governmental entities, and members of the public. Marie alleged that Soul, without her knowledge or permission, changed the locks at CKBS and utilized CKBS property, including tools and equipment. After Marie sued

---

[2]    All further undesignated statutory references are to the Code of Civil Procedure.

2

Soul, and before he countersued, Marie filed two unlawful detainer actions against Soul, Cody, and various "Doe" defendants.[3]

**B.      *The Cross-Complaint and Amended Cross-Complaint***

On September 11, 2012, Soul and Gonzales, along with other former CKBS employees filed a cross-complaint against Marie, alleging various Labor Code violations regarding non-payment of wages; unfair business practices; unjust enrichment; breach of contract; and a good faith improver claim (§ 741).

On October 16, 2012, Marie filed a demurrer to the cross-complaint, arguing, among other things, that, as a family member, Soul was exempt from the Labor Code sections upon which he relied. The trial court sustained the demurrer with leave to amend as to the first through fourth causes of action. The demurrer was overruled in all other respects.

At her December 18, 2012 deposition, which was noticed for both the civil action and unlawful detainer proceedings, Marie testified Gonzales came to her home on December 5, 2012 and told her that "he didn't understand Soul's behavior," and "he did not participate or take one item off the property." Gonzales told Marie that he "wanted out of the lawsuit." Marie testified that she told Gonzales that she would not believe it until she saw it in writing, to which Gonzales replied, " 'Write it up. I'll sign it.' " In his presence and using his words, along with her own input, Marie handwrote a statement that Gonzales signed. Marie produced a copy of the document at her deposition. It reads in pertinent part as follows: "Under penalty of perjury, I, Michael Gonzales without duress, freely enter into this statement. I was unaware of my participation and the details of the lawsuit . . . served to Marie Cotton . . . I have received a copy . . . of this lawsuit and have read it. I do not agree with it. The statements written are false, not truthful. I did not make such statements and for these reasons withdraw from this lawsuit effective immediately." (Original capitalization omitted.)

---

[3]      It appears from the record on appeal that Gonzales was not a party to the unlawful detainer proceedings.

Thereafter, on January 9, 2013, Soul, Gonzales, and the other cross-complainants filed an amended cross-complaint, alleging, among other things, causes of action for civil threats and intimidation (Civ. Code, § 52.1, subd. (b) [ninth cause of action]) and conversion (Civ. Code, §§ 1965, 1993.03, 1174, subd. (e) [tenth cause of action]). The gist of the ninth cause of action is that Gonzales was threatened into changing his position in the cross-action against Marie. According to the amended cross-complaint, when Gonzales went to Marie's property to retrieve his personal property, she would not allow him access to it, unless he signed a false statement indicating that he no longer wanted to pursue the cross-complaint. It was further alleged that Marie told Gonzales that she "feels terrible about being forced to take his money" and "all of his property, and also take his parents['] property," "including their retirement," if he continued the cross-complaint.

As to the tenth cause of action for conversion, the amended cross-complaint alleged Marie unlawfully asserted control over the personal property of Soul and Gonzales, that she ultimately destroyed such property with a bulldozer, and that she told Gonzales he would have to change his position in the cross-action if he wanted access to his property.

### C.     *The Special Motion to Strike*

On February 11, 2013, Marie filed a special motion to strike the ninth and tenth causes of action in the amended cross-complaint under the anti-SLAPP statute on the grounds that these causes of action arose from protected activities regarding the pending litigation. She further contended that her activities were privileged pursuant to Civil Code section 47, subdivision (b), and as such, cross-complainants could not establish a probability of prevailing on the challenged causes of action.

Marie's special motion to strike included a declaration from her counsel, in which counsel explained that in the course of the unlawful detainer proceedings, Marie agreed to provide an extension of time for Soul, his son, and various Doe defendants (defendants) to vacate the property and remove all of their possessions. The extensions spanned over two months, the last of which was memorialized in a settlement agreement,

4

which was attached to the declaration. Pursuant to the terms of the settlement agreement, defendants were required to "voluntarily surrender, vacate, and restore possession of the premises to [Marie] on or before 5:00 p.m. on November 30, 2012." The settlement agreement further specified that defendants "shall remove all of defendants' personal 'household property' from the premises. Any personal 'household property' of defendants left at the premises beyond the agreed upon surrender, vacate, and restore date shall be deemed abandoned by defendants, and [Marie] may dispose of such abandoned and personal 'household property' in any manner [she] deems appropriate."

In opposing the motion to strike, cross-complainants argued, among other things, that Marie's "threats, extortion, Bane Act violation under [Civil Code] [s]ection 52.1, [c]onversion, and violations of property rights under Civil Code [s]ection[s] 1965, 1933.03, and Code of Civil Procedure [s]ection 1174[, subdivision] (e)" did not arise from protected activity within the meaning of the anti-SLAPP statute. They further argued that to the extent Marie could demonstrate her acts arose from protected activity, such acts were not privileged as they constituted civil extortion and actionable conversion.

The opposition included declarations from Soul and Gonzales. In his declaration, Soul averred that he was unable to retrieve his "household property" from Marie's property by the November 30, 2013 [*sic*] deadline because it had been raining for five days and Marie had " 'borrowed' " and not returned the trailer needed for the move. He further declared that Marie had barricaded the access to his residential and commercial property and destroyed his property with a bulldozer.

In his declaration, Gonzales stated that he called Marie on December 5, 2012, after he discovered the barricade on her property. When Gonzales met with Marie to get his car from her property, she told him that he had filed the " 'wrong' " lawsuit. According to Gonzales, Marie told him that he "did not have anything to gain from the lawsuit" and that he "would be responsible for the costs of the suit." Marie reportedly told Gonzales that if he could not pay those costs, she would " 'garnish' " his wages and if that was not enough she "would make [his] parents responsible for the money." She then handed

5

Gonzales a handwritten document and told him that if he wanted to avoid such financial consequences and if he wanted to get his car, he would sign the document withdrawing his participation in the lawsuit.

In her reply to the opposition to the special motion to strike, Marie asserted that the "opposition papers, which now claim that [her] conduct amounted to some kind of criminal action, illustrate precisely why the claims should be stricken as they amount to 'Strategic Litigation Against Public Participation.'   She argued that the only " 'property' " actually identified by Soul or Gonzalez in their declarations was a vehicle "owned by [] Gonzales, who was not even a party to the unlawful detainer action," and who "did not have any rightful claim to enter" her property without her "permission." Marie further asserted that there was "absolutely nothing alleged which suggests any 'extortion' of any kind as defined in the law."  She adamantly argued that the "criminal exception" identified in *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*) had no application in the instant case.  Marie also lodged numerous objections to the declarations of Soul and Gonzalez.

### D.      *Ruling and Hearing on Special Motion to Strike*

Prior to the May 14, 2013 hearing on the special motion to strike, the trial court issued a tentative ruling, which appeared to grant the motion as to the ninth cause of action for threats and intimidation and deny the motion as to the tenth cause of action for conversion.  The tentative ruling provides, in pertinent part, as follows:  "Marie Cotton has met her burden as [to] the 9th COA, as the allegations do rest primarily on acts taken in furtherance of the pending lawsuit, and were not illegal under the *Flatley* standard. However, she has not carried her burden as to the 10th COA for conversion. [¶]   Marie Cotton argues that the 9th COA is fatally flawed in that the acts alleged fall under the litigation privilege, and therefore she cannot be held liable. . . . [¶]  Was Marie Cotton's alleged behavior (extortion) protected by the litigation privilege in [Civil Code section] 47 [?] . . . The litigation privilege does protect from any tort except malicious prosecution.  Here, the question of [*sic*] whether Marie Cotton's alleged extortion, in

6

furtherance of defending herself from litigation was privileged. The parties should come prepared to the hearing to discuss this." (Italics added.)

At the May 14, 2013 hearing, Marie's counsel argued that the motion should be granted as to the tenth cause of action as well. Counsel argued that although the tenth cause of action was given the title of conversion, it essentially incorporated all of the allegations of the ninth cause of action and relied "heavily upon the fact that the property at issue raised in both the ninth and tenth causes of action were the subject of some sort of settlement agreement." Marie's counsel argued that, for purposes of analysis, "the ninth and tenth causes of action really are the same."

In the written order after hearing, the trial court modified the tentative ruling and denied the special motion to strike in its entirety. As in the tentative ruling, the trial court ruled that Marie had not met her burden as to the tenth cause of action conversion, but met her burden as to the ninth cause of action, explaining that the allegations rested primarily on acts taken in furtherance of the pending lawsuit, and were not illegal as a matter of law under the *Flatley* standard. Nevertheless, the trial court ruled that Marie's alleged extortive behavior was not protected by the litigation privilege. (Civ. Code, § 47.) In so ruling, the court reasoned that "the communicative acts were (allegedly) used in furtherance of the noncommunicative conduct, to wit, extortion. Liability would not be based on Marie Cotton's statements, but rather her alleged use of fear and intimidation to induce [Gonzales] to sign the declaration."

7

## II. DISCUSSION

### A. *Applicable Law and Standard of Review*

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted . . . section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056 (*Rusheen*).) The statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff [or cross-complainant] has established that there is a probability that the plaintiff [or cross-complainant] will prevail on the claim." (§ 425.16, subd. (b)(1).) The Legislature has directed that the language of the statute be "construed broadly." (§ 425.16, subd. (a).)

Subdivision (e) of section 425.16 identifies four general categories of activities that constitute protected " 'act[s] in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " As used in section 425.16, " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) Conduct or speech that is potentially subject to

8

anti-SLAPP protection under clauses (1) and (2) of section 425.16, subdivision (e)—unlike clauses (3) and (4)—do not have a limitation that the speech or petitioning rights concern an issue of public interest. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117-1118.)

The anti-SLAPP motion here concerns statements that Marie claims are protected under subdivisions (e)(1) and (e)(2), namely, "any written or oral statement or writing" made before a "judicial proceeding" or "made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(1) & (2).) To the extent Marie's motion involves her alleged acts of conversion, she maintains that such conduct is based on her protected statements.

A court's consideration of an anti-SLAPP motion involves a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)

In order to establish a probability of prevailing on the claim, "the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821, superseded by statute on other grounds as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547.) "Thus, plaintiffs' burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment." (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768.)

9

We review the trial court's decision to grant or deny an anti-SLAPP motion de novo. (*Flatley, supra,* 39 Cal.4th at p. 325.) In doing so, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) " 'However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley, supra,* 39 Cal.4th at p. 326.)

## B.     *Protected Activity*

In determining whether a plaintiff's cause of action arises from any act in furtherance of a defendant's right to petition or free speech, we do not focus on "the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.) We review the gravamen of a cause of action to see if it is based on defendant's protected activity. (*McConnell v. Innovative Artists Talent & Literary Agency, Inc.* (2009) 175 Cal.App.4th 169, 177; *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.) If the cause of action alleges both protected and unprotected activity, it will be subject to a section 425.16 motion unless the protected conduct is merely "incidental" to the unprotected conduct. (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1287-1288; *Gallanis-Politis v. Medina* (2007) 152 Cal.App.4th 600, 614.)

" 'A cause of action "arising from" defendant's litigation *activity* may appropriately be the subject of a section 425.16 motion to strike.' [Citations.] 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.]" (*Rusheen, supra,* 37 Cal.4th at p. 1056, italics added [obtaining a writ of execution and levying on a judgment debtor's property was protected activity]; accord *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 489 [attorney's alleged improper solicitation of a client and wrongful enforcement of a settlement agreement was protected activity (*Taheri*)]; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 ["a

10

cause of action arising from a defendant's alleged improper filing of a lawsuit may appropriately be the subject of a section 425.16 motion to strike"] (*Chavez*)); *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1420 [attorney letter regarding dispute client had with third party subject to anti-SLAPP motion] (*Dowling*).)

In the present case, the cross-complaint alleged that Marie engaged in the following activity: 1) On or about December 2, 2012, "[a]fter having been involved in this lawsuit," Marie "blocked" Soul's and Gonzales's "access to their personal and business property;" 2) on or about December 2, 2012, Marie "intentionally harm[ed] and destroy[ed]" the property of Soul and Gonzales by "various means, including causing it to be run over with a bull dozer;" 3) on or about December 5, 2012, Marie told Gonzales that "if he wanted access to his property, . . . he would have to change his position in this very lawsuit;" and 4) on or about December 5, 2012, Marie told Gonzales that "if he drops the suit and goes away, he would be saving himself and his parents money, property and their retirement, and [Marie] would hate to take it but would be forced to if he continues with this lawsuit."

The gravamen of the ninth and tenth causes of action in the amended cross-complaint is that Marie acted tortiously by threatening Gonzales so that he would drop out of the action against her, by refusing to allow him access to his property unless he changed his litigation position, and by interfering with Soul and Gonzales's ownership interest in property subject to either the unlawful detainer action or the cross-complaint. This litigation activity is subject to an anti-SLAPP motion. (See *Rusheen, supra,* 37 Cal.4th at p. 1056; *Taheri, supra,* 160 Cal.App.4th at p. 489; *Chavez, supra,* 94 Cal.App.4th at p. 1087; *Dowling, supra,* 85 Cal.App.4th at p. 1420.)

Cross-complainants argue that Marie's actions were "criminal" and thus do not qualify for protection under the anti-SLAPP statute. We are not persuaded. The mere allegation of illegality is not sufficient to remove an action from section 425.16's motion to strike procedure. "[C]onduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage . . . simply because it is *alleged* to have been unlawful or unethical." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 910-911.) It

11

is only in the "narrow circumstance" in which "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, [that] the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley, supra,* 39 Cal.4th at pp. 316, 320; see also *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 285 [where "a defendant's assertedly protected constitutional activity is alleged to have been illegal . . ., the illegality must be established as a matter of law either through the defendant's concession or because the illegality is conclusively established by the evidence"]; *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1298-1299 [where extortion claim based on an attorney demand letter did not constitute criminal conduct as a matter of law, it was subject to dismissal under the anti-SLAPP statute].) "If, however, a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Flatley, supra,* 39 Cal.4th at p. 316; see also *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 460 [where "the legality of [the defendant's] exercise of a constitutionally protected right [is] in dispute in the action, the threshold element in a section 425.16 inquiry has been established"].)

For example, in *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356 (*Paul*), disapproved on another point in *Equilon, supra,* 29 Cal.4th 53, 68, fn. 5, the court addressed a similar argument. There, the defendants conceded that, as a matter of law, their conduct was illegal and a violation of the rules prohibiting money laundering set forth in the Political Reform Act. (*Paul*, *supra*, 85 Cal.App.4th at p. 1367.) The court held that under those circumstances, the defendants' conduct was not protected by the anti-SLAPP statute. (*Ibid.*) The court emphasized, however, that "had there been a factual dispute as to the legality of defendants' actions, then we could not so easily have disposed of defendants' motion." (*Ibid.*)

In *Flatley, supra,* 39 Cal.4th 299, our Supreme Court agreed with *Paul's* conclusion that section 425.16 cannot be invoked by a defendant whose assertedly

protected activity is illegal as a matter of law. (*Flatley, supra,* 39 Cal.4th at p. 317.) The defendant in *Flatley* was an attorney who sent a letter to the plaintiff demanding a seven-figure payment. The court concluded that the defendant's "communications constituted criminal extortion as a matter of law and, as such, were unprotected by the constitutional guarantees of free speech or petition." (*Id.* at p. 305.) In so holding, the court explained that "where either the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence, the [anti-SLAPP] motion must be denied." (*Id.* at p. 316.)

In *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644 (*Mendoza*), the plaintiff alleged that the defendant sold information to plaintiff's prospective employer it obtained from the Megan's Law Web site in violation of a statute, Penal Code section 290.4, subdivision (d)(2)(E). In opposition to the defendant's anti-SLAPP motion, the plaintiff argued that the defendant's "illegal" conduct was not protected activity. (*Mendoza, supra,* 182 Cal.App.4th at p. 1653.) The court, however, rejected this argument. It stated: "Our reading of *Flatley* leads us to conclude that the Supreme Court's use of the phrase 'illegal' was intended to mean criminal, and not merely violative of a statute." (*Id.* at p. 1654; accord *G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 616 [failure to redact information in violation of a court rule was "not the type of criminal activity addressed in either *Flatley . . .* or *Paul* "].)

Here, Marie does not concede she engaged in illegal activity, and cross-complainants have not conclusively shown by evidence that Marie's conduct was illegal as a matter of law. Indeed, Marie flatly denies threatening Gonzales or otherwise pressuring him into signing the statement renouncing his participation in the cross-complaint. As stated in Marie's supporting declaration, Gonzales approached her about the lawsuit; she averred that she believed Gonzalez did this in order to set her up. Accordingly, Marie's alleged activities do not fall into the narrow exception for illegal activity.

Nevertheless, cross-complainants contend that Marie's conduct resulting in the "destruction of the property of another" does not constitute protected activity within the

ambit of the anti-SLAPP statute.  In support of this position, they cite to *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284, 1296-1297 (*Novartis*), which held that protest acts of vandalism were not subject to the anti-SLAPP statute.  Cross-complainants' reliance on *Novartis* is misplaced.  In *Novartis*, the plaintiffs sued a corporation formed for the purpose of supporting an international campaign to expose the plaintiffs' abusive treatment of animals.  (*Id.* at p. 1288.)  The plaintiffs sought injunctive relief against the defendant based on claims that the individuals acting for the defendant engaged in various acts of unlawful harassment, threats, trespass, and property destruction.  (*Id.* at pp. 1289-1293.) The defendant claimed that its activities were protected acts of free speech.  (*Id.* at p. 1296.) The Court of Appeal disagreed, stating:  "[T]he evidence conclusively establishes that the activities described at length in the complaint, and about which there is no dispute, are illegal as a matter of law."  (*Ibid.*)  *Novartis* is distinguishable because the causes of action asserted by the plaintiffs in that case indisputably arose directly from the unlawful actions of the defendant.  For the reasons stated above, the same is not true here.

In sum, virtually all of Marie's alleged wrongful conduct arose from her litigation activity and none of it was, as a matter of law, illegal.  Marie therefore has made the threshold showing that the ninth and tenth causes of action are subject to an anti-SLAPP motion.

## C.     *Probability of Prevailing on the Merits*

Having determined that Marie's alleged conduct falls within the ambit of the anti-SLAPP statute, we turn to the issue of whether cross-complainants have demonstrated a probability they will prevail on the challenged causes of action.

Marie argues that cross-complainants cannot demonstrate a probability of success on the merits because her conduct is absolutely privileged under the litigation privilege. The litigation privilege, as codified by Civil Code section 47, subdivision (b), " ' "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4)

14

that [has] some connection or logical relation to the action." [Citation.] The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." [Citation.]' " (*Olsen v. Harbison* (2010) 191 Cal.App.4th 325, 333.) The privilege also applies to conduct outside the courtroom. (*O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 134.) " 'Any doubt as to whether the privilege applies is resolved in favor of applying it.' [Citations.]" (*Tom Jones Enterprises, Ltd. v. County of Los Angeles* (2013) 212 Cal.App.4th 1283, 1294.)

"Because the litigation privilege protects only publications and communications, a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative. [Citation.] The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Rusheen, supra,* 37 Cal.4th at p. 1058; accord *Brown v. Kennard* (2001) 94 Cal.App.4th 40, 45 (*Brown*) ["The litigation privilege applies only to torts arising from communicative acts; it does not protect purely noncommunicative tortious conduct"]. (Fn. omitted.))

### 1. Civil Threats and Intimidation

The ninth cause of action is for civil threats and intimidation in violation of Civil Code section 52.1, also known as the Bane Act. (See *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 955.) " 'The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law. [Citation.]' [Citation.]" (*Id.* at pp. 955-956.)

The cross-complaint alleged that Marie violated that Bane Act by 1) threatening Gonzalez and his parents with financial ruin unless he changed his position in the instant lawsuit and 2) denying Gonzales access to his personal property unless he changed his position in the instant lawsuit. In support of this cause of action, Gonzales filed a

15

declaration contradicting his prior written statement, in which he declared under penalty of perjury that he freely and without duress withdrew from the cross-complaint. In his supporting declaration, Gonzales stated that he called Marie and asked if he could get his car from her property. When he met with Marie, she told him that the lawsuit he had filed was wrong. Marie allegedly told Gonzales that he "did not have anything to gain from the lawsuit," and that he "would be responsible for the costs of suit and if [he] couldn't pay she would 'garnish' [his] wages." She also purportedly threatened to hold his "parents responsible for the money." According to Gonzales, Marie said that he could get his car back and avoid any financial consequences if he signed the handwritten document she prepared.

Marie, however, stated in her reply declaration that she disputed "each and every lie" contained in the opposing declarations. Marie stated that the so-called " 'personal vehicle' " referred to in Gonzales's declaration was inoperable. She declared the following: "It was on my property for at least a year prior to its removal, along with a truck that he also kept in my back property. On at least six occasions prior to December 5, 2012, I had arranged with Mr. Gonzales for him (and had begged him) to come and remove it from my property. He repeatedly failed to show up even though he only lives one driveway away from my property. The day he finally came to remove the vehicle, he contacted me first and asked if he could speak with me about the lawsuit . . . We talked about the lawsuit. It was amicable . . . Everything he told me, I put in the statement. I did not threaten to keep his junk vehicle; it was not in my interest to do so." Marie further averred that she "wrote the statement out, in his presence, and with his input. He was free to leave at any time, or refuse to sign it. He read it, and signed it, of his own free will. It was a friendly meeting. I now believe that he did all of this to take advantage of me and set me up in some way."

It is clear that Marie's only conduct in connection with the alleged Bane Act violation were the alleged verbal threats made in the pending litigation. This communicative conduct is protected by the litigation privilege. (See, *Rusheen, supra,* 37 Cal.4th at p. 1058; *Malin v. Singer, supra,* 217 Cal.App.4th at p. 1302.) Cross-

complainants thus did not meet their burden of showing they could prevail on the civil threats and intimidation cause of action.

## 2. *Conversion*

The tenth cause of action is for conversion. " ' "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." ' [Citation.] " (*Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38, 45.) A cause of action for conversion can be based on either the taking of property or its intentional destruction or alteration. (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 710, 711, pp. 1034-1035.)

According to the amended cross-complaint, Marie violated various unlawful detainer laws[4] and committed conversion by 1) blocking Soul's access to his property and destroying said property; and 2) blocking Gonzales's access to his property, destroying said property, and threatening Gonzales to change his position in the instant litigation in order to gain access to his property.

In support of the allegations that Marie committed conversion with respect to Soul's property, Soul filed a declaration stating that he and Marie had reached a settlement in the unlawful detainer action, in which he and his son agreed to vacate the premises and remove all of their " 'residential' " and " 'household' " property on or before November 30, 2012. Soul further averred that he was unable to retrieve his property prior to the agreed upon deadline because "it had rained for five straight days prior" and because Marie had " 'borrowed' " and not returned a trailer needed for the move. Soul believed his attorney had spoken with Marie's attorney and the two agreed that he could have through the weekend to retrieve his belongings. However, when Soul

---

[4]    The tenth cause of action is based on purported violations of Civil Code section 1965 ("Surrender of Personal Property by Tenant"), Civil Code section 1993.03 ("Disposition of Property Remaining on Premises at Termination of Commercial Tenancy"), and section 1174 ("Judgment for Possession of Premises").

17

attempted to get his property that weekend, he discovered that various items of his " 'residential' " and " 'commercial' " property, along with Gonzales's "personal vehicle" were behind a barricade on Marie's property. Despite numerous pleas, Soul was unable to retrieve his property; at some point, he "observed a large bulldozer, bulldozing and destroying" his commercial and residential property.

In support of the motion to strike, Marie submitted a declaration from her attorney, stating that "[i]n the course of the unlawful detainer proceedings, [Marie] agreed to provide an extension of time for the defendants [Soul and his son Cody] to vacate the property and remove all of their possessions. The extensions lasted over two months in total, that last which was memorialized" in the settlement agreement. The November 5, 2012 settlement agreement, which was attached as an exhibit, provided, in, pertinent part, as follows: "Defendants shall voluntarily surrender, vacate, and restore possession of the premises to plaintiff on or before 5:00 p.m. on November 30, 2012. Failure by defendants to surrender, vacate and restore possession to plaintiff shall constitute a default under this agreement . . .[¶] Defendant shall remove all of defendants' personal 'household property' from the premises. Any personal 'household property' of defendants left at the premise beyond the agreed upon surrender, vacate and restore date shall be deemed abandoned by defendants, and plaintiff may dispose of such abandoned personal property 'household property' in any manner plaintiff deems appropriate . . . . [¶] . . . [¶] Defendants herein waive any right of appeal and any further stay of enforcement beyond the stipulated vacate, surrender, and restore date for any reason. The parties hereto agree that should such request for stay or appeal be brought, it shall be denied by the court based on this stipulation . . . ."

Soul offered no evidence that the settlement agreement was invalid. Although he stated that rainy weather occurring five days before the November 30, 2012 deadline hindered his ability to retrieve his possessions, he offered no evidence that he was precluded from accessing his property between 5th and 25th of November. It is thus undisputed that Marie's conduct in connection with the alleged conversion and destruction of Soul's property was expressly authorized by the November 5, 2012

18

settlement agreement signed by Marie and Soul. Clearly, Marie's conduct was related to the litigation objective of the unlawful detainer action and is within the litigation privilege. Ample authority supports this conclusion.

For example, in *Brown, supra,* 94 Cal.App.4th 40 the plaintiff alleged that the defendant, an attorney, wrongfully caused a writ of execution to be levied upon his exempt funds. (*Id.* at p. 43.) As a preliminary matter, the court noted that "judgment enforcement efforts, as an extension of a judicial proceeding and related to a litigation objective, are considered to be within the litigation privilege." (Fn. omitted.) (*Id.* at pp. 49-50.) The court then held that the privilege not only protects the communicative act of applying for a writ of execution, "it also *extends to the act of carrying out the directive* of the writ. To hold otherwise would effectively strip the litigation privilege of its purpose." (*Id.* at p. 50, italics added, fn. omitted.) The court further stated that "the policy underlying the litigation privilege of encouraging free access to the courts by discouraging derivative litigation simply outweighs the policy of providing [the plaintiff] with a tort remedy for an allegedly wrongful enforcement of a judgment." (*Id.* at p. 50.)

In *Rusheen*, the California Supreme Court approved of and refined the holding in *Brown*. The high court concluded that "where the cause of action is based on a communicative act, the litigation privilege extends to those noncommunicative actions which are necessarily related to that communicative act." (*Rusheen, supra,* 37 Cal.4th at p. 1052.) In *Rusheen*, attorney Barry Cohen obtained on behalf of his client a default judgment against Terry Rusheen. Cohen permitted his client to take steps to collect on the judgment, such as obtaining a writ of execution and levying on Rusheen's property in Nevada. (*Rusheen, supra,* 37 Cal.4th at pp. 1053-1054.) Rusheen subsequently sued Cohen for abuse of process. He claimed that Cohen obtained the default judgment by filing false and perjurious declarations. (*Id.* at p. 1054.) Rusheen argued that the wrongful act of levying on property in execution of judgment was a noncommunicative act and thus unprivileged. (*Rusheen, supra,* 37 Cal.4th at p. 1061.) The California Supreme Court, however, held that even if levying on property involved noncommunicative conduct, "the gravamen of the action was not the levying act, but the

19

procurement of the judgment based on the use of allegedly perjured declarations of service." (*Id.* at p. 1062.) The court further held that because the gravamen of the complaint was a privileged communication, the privilege extended to "necessarily related noncommunicative acts (i.e., act of levying)." (*Ibid.*)

So too here, Marie's alleged noncommunicative acts of barricading and destroying Soul's property were necessarily and undeniably related to the litigation objective of the unlawful detainer action.

Cross-complainant's second basis for conversion is that Marie interfered with Gonzales's property by blocking his access to it, destroying it, and telling him he could only access his property by changing his position in the instant litigation. The only property referenced in Gonzales's declaration was his "personal vehicle." According to his declaration, Gonzales discovered on December 2, 2012 that his car had been barricaded behind a gate on Marie's property. After several "attempt[s]" to contact Marie on the telephone, he reached her on December 5, 2012. Gonzales declared that the only reason he signed the document prepared by Marie was that he wanted to get his car. He returned to Marie's property three days later and retrieved his car.

In addition to her declaration describing Gonzales's "personal vehicle" as an inoperable "junk vehicle," Marie submitted a declaration from a longtime visitor to her property. In his declaration, Robert Rowland stated that Gonzales's " 'personal vehicle' " had been "sitting in the back of Marie Cotton's property in pieces for over two years." As Rowland had been coming to Marie's property for the last 25 years, he had personal knowledge of this fact. Rowland stated that he "personally waited for Gonzales to show up on several occasions" (at least four, possibly more) when Gonzales was supposed to pick up his Buick, "but he never showed up." Finally, Rowland "pushed the non-operative vehicle to the front parking lot off of Marie's land . . . ."

Gonzales's claim of conversion is based, in part, on Marie's alleged threat to withhold access to his property unless he changed his position in this lawsuit. This communicative conduct is the same conduct alleged in the ninth cause of action. For the reasons discussed above, it was protected by the litigation privilege. To the extent

20

Gonzales's claim is based on Marie's alleged noncommunicative conduct of blockading and destroying his "personal and business property," he presented no evidence to support this claim. In his declaration, Gonzales only referred to being temporarily denied access to his car, which he ultimately retrieved. Insofar as Gonzales claimed that Marie unlawfully blocked his access to his car, Marie presented two declarations stating that Gonzales had been requested to remove his vehicle from her property on numerous occasions, yet he failed to do so. Gonzales presented no evidence contradicting these facts or otherwise establishing his right to store his vehicle on Marie's property. Notably, there is no indication that Gonzales was ever a defendant in the unlawful detainer proceedings.

It is thus undisputed that Marie's only conduct in connection with alleged interference and destruction of Gonzales's personal and business property was to put a barricade on her own property that limited Gonzales's access to his inoperable vehicle. This alleged interference was necessarily related to the communicative and privileged conduct (i.e., alleged threats) in the instant action.

### III. DISPOSITION

The order denying Marie's special motion to strike the ninth and tenth causes of action in the amended cross-complaint is reversed and the trial court is directed to enter a new order granting the motion. Marie is entitled to recover her costs on appeal.

21

                                                 _____

                                                 REARDON, J.

We concur:


_____

RUVOLO, P. J.


_____

RIVERA, J.