

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00310-CV

---

JUDY KOSTURA, STAN M. PUTMAN, JR., AND KOSTURA & PUTMAN, P.C. F/K/A JUDGE, KOSTURA & PUTMAN, P.C., APPELLANTS

V.

JOHN JUDGE, APPELLEE

---

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 78-139-B, Honorable Titiana Frausto, Presiding

---

June 7, 2021

OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

*"A lawyer's time and advice is his stock in trade."* —Abraham Lincoln

This case examines whether a law firm's letters to its clients announcing changes in the relationship between the two arises out of the sale of services so as to exempt such communications from the reaches of the Texas Citizens Participation Act (TCPA)[1], as

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011 (West 2020 & West Supp. 2020). An interlocutory order denying a TCPA motion to dismiss is immediately appealable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(12) (West Supp. 2020). Unless otherwise indicated, citation to the TCPA (or the Act) shall be "*Id.* § ____."

amended in 2019.  After considering the plain language of the statute, we hold that the exemption does apply under these circumstances.  We therefore affirm the order of the district court.

## Background

Appellants, Judy Kostura; Stan M. Putman, Jr.; and the law firm of Kostura & Putman, P.C. f/k/a Judge, Kostura & Putman, P.C. (collectively, "the firm") bring this interlocutory appeal from the district court's order denying their Texas Citizens Participation Act motion to dismiss some tort claims filed against them by Appellee and former law partner, John Judge.  In 2003, Kostura, Putman, and Judge formed a law firm that is the predecessor to the Appellant firm.  Each shareholder owned one-third of the firm's shares, and each served as a director.

The firm alleges that beginning as early as 2018 and continuing through much of 2020, Judge exhibited signs of physical and mental health problems, as well as alcohol dependency.  On numerous occasions in 2020, Judge was absent from the firm when he presented at inpatient facilities for treatment of alcohol dependence and mental health concerns.  On other occasions in 2020, Judge was absent so that he could receive healthcare for injuries sustained during multiple falls.  The firm contends that Judge's unavailability and impairments posed problems for attorneys, clients, and staff, and allege that Judge was largely unresponsive to client needs or to Kostura's and Putman's remedial efforts.

The firm alleges that in April 2020, Kostura and Putman voted to invoke the disability clause in the firm's operating agreement and to remove Judge from participation in the firm.  In June, following a period during which the firm alleges Judge did not respond

2

to Kostura's and Putman's inquiries about his future plans, the firm sent letters to clients whom Judge had represented; virtually all of the letters state the following in relevant part:

> As you are likely aware, John Judge has been suffering some health issues over the past several months. While we hoped he would be able to return to the practice of law, it is our personal opinion that he is not able to do so now and that his disability may continue into the foreseeable future. We have monitored your case on his behalf and responded to firm clients during this time, but it is not feasible for the firm to continue representation on your case. We therefore request that you retain new counsel for your legal matter. Please have that attorney contact us by June 15, 2020 so we can arrange an orderly transition of your file to your new attorney.
>
> John Judge is no longer a member of this firm. If you wish to retain John Judge as a sole practitioner to continue with representation of you in your case, you may contact him at [Judge's contact information].

(alteration in brackets).

The firm sent one client a letter that differed in some respects. Unlike the sentence opining that Judge's disability might continue into the foreseeable future, this letter added, "Mr. Judge believes he will be able to handle cases and continue practicing." Rather than announcing the termination of the client's relationship with the firm, the firm instructed the client, "If you prefer for us to handle your case, you may retain us."

Judge filed the underlying lawsuit in June 2020, alleging defamation, invasion of privacy, and intentional infliction of emotional distress. The firm answered and filed a motion to dismiss under the TCPA, alleging Judge's claims against them were in response to their exercise of their right of free speech, right to petition, and right of association. Thereafter Judge amended his petition, adding claims of breach of fiduciary duty, a suit for accounting, and seeking declaratory relief. After receiving briefing, the

district court denied the firm's motion to dismiss, expressly concluding the TCPA did not apply because of the commercial-speech exemption.[2]

## Analysis

On appeal, the firm claims the commercial-speech exception is inapplicable for various reasons. We disagree, and hold the district court correctly denied the motion to dismiss after applying the commercial-speech exception.

This appeal requires us to review provisions of the TCPA, which we conduct de novo. *ExxonMobil Pipeline Co. v. Coleman,* 512 S.W.3d 895, 899 (Tex. 2017) (per curiam); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). Drafting and passing legislation is often the result of compromise between competing policy interests, so it is essential that courts "stay in their lane" when construing the meaning of statutes. *See In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 614 (Tex. 2006) (orig. proceeding). This means that courts should divine the meaning of the Legislature's intent by looking at the statute's plain language. *Lippincott*, 462 S.W.3d at 509. If that language is unambiguous, courts must apply its terms as written "unless a different meaning is supplied by statutory definition, is apparent from the context, or the plain meaning would lead to an absurd or nonsensical result." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 133 (Tex. 2019) (quoting *Beeman v. Livingston*, 468 S.W.3d 534, 538 (Tex. 2015)). "We do not read words into a statute to make it what we consider to be more reasonable, rather we may do so only to prevent an absurd result." *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 52 (Tex. 2014).

---

[2] *Id.* § 27.010(a)(2).

4

We also review de novo whether the parties met their respective burdens of proof under the TCPA.  *Tex. Custom Wine Works, LLC v. Talcott,* 598 S.W.3d 380, 385 (Tex. App.—Amarillo 2020, no pet.).

**Whether the TCPA Applies to the Firm's Communications**

We begin with whether Judge's claims are based on the firm's exercise of the right of free speech, association, or to petition.  *Id.* § 27.001(1)-(4); *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018).  As amended, the TCPA permits a party to file a motion to dismiss a legal action if the suit "is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association or arises from any act of that party in furtherance of the party's communication or conduct" described in section 27.010(b).  *Id.* § 27.003(a).

At the time the firm moved to dismiss, Judge had sued to allege the firm sent the above-quoted letter to at least 14 clients as a "blatant act to terminate [Judge's] attorney-client relationship with his clients."  Judge alleged that the letter's statements regarding his alleged inability to return to the practice of law were false, deliberate, and defamatory. He also claimed the defendants attempted to involuntarily expel him from the firm, and alternatively pleaded that the firm sought "to force him to resign from the firm and the practice of law, to his prejudice, irreparable injury, and legal damage; and that of his clients."

In an amended pleading after the firm filed its TCPA motion to dismiss, Judge also alleged the firm failed to comply with its corporate agreement when expelling Judge and compensating Judge for his interests in the firm.  The parties agree these allegations are not being challenged in the firm's TCPA motion to dismiss.

5

The TCPA defines the "exercise of free speech" to mean "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). "Public concern" is defined to include various statements and activities, including "matter[s] of political, social, or other interest to the community," and "subject[s] of concern to the public." *Id.* § 27.001(7)(B),(C). Private communications may fall under the reach of the TCPA if they are made in connection with a subject of public concern. *See Coleman*, 512 S.W.3d at 899; *Lippincott*, 462 S.W.3d at 509.

We hold that Judge's lawsuit to challenge the accuracy of statements in the firm's letter to clients constitutes a legal action based on the firm's "exercise of the right of free speech" as defined by the Legislature. The letters were communications made in connection with a matter of public concern because they were written statements, albeit private, changing the attorney-client relationship because of an alleged disability affecting Judge's capacity to practice law. The TCPA does not condition its reach to only those statements that expressly identify matters of public concern; the statute merely requires the statement be "in connection with" one. *See Coleman*, 512 S.W.3d at 901.

Certainly, statements in connection with an attorney's quality of legal services in the marketplace are matters of concern for the public. *See DeAngelis v. Protective Parents Coal.*, 556 S.W.3d 836, 852 (Tex. App.—Fort Worth 2018, no pet.); *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015). This is reinforced from the first paragraph to the preamble of Texas Disciplinary Rules of Professional Conduct, which observes, "[l]awyers, as guardians of the law, play a vital role in the preservation of society." TEX. DISCIPLINARY R. PROF. CONDUCT preamble ¶ 1, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A. (State Bar Rules art. X, § 9).

6

An attorney's physical and mental capacity to practice law is an essential ingredient of the quality of legal services she provides. The public interest, as enforced through the disciplinary rules, is served by the requirement that a lawyer withdraw from representation "when the lawyer's physical, mental or psychological condition materially impairs the lawyer's fitness to represent the client." *See* TEX. DISCIPLINARY R. PROF. CONDUCT R. 1.15(a)(2), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A. (State Bar Rules art. X, § 9). Lawyers in a firm can be subject to discipline for the acts of their partners if they "knowingly fail[] to take reasonable remedial action to avoid or mitigate the consequences of the other lawyer's violation." *See* TEX. DISCIPLINARY R. PROF. CONDUCT R. 5.01(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A. (State Bar Rules art. X, § 9).[3] We hold that when the firm sent letters regarding Judge's disability and ability to practice law, it was engaging in the exercise of the right of free speech as defined in the TCPA. *Id.* § 27.001(a)(3, 7).

The firm alternatively argues the TCPA applies under the "right of association" and "right to petition" prongs. Because we hold that, on this record, the communications constitute the exercise of the right of free speech as statutorily defined, we need not reach this issue. TEX. R. APP. P. 47.1. Accordingly, we express no opinion on whether the challenged communications also satisfy the TCPA as exercises of the right of association or to petition.

---

[3] In reaching today's holding, we are not concluding that Judge violated any disciplinary rule. However, efforts to attempt to comply with the disciplinary rules are consistent with matters of public concern.

7

**Whether the Firm's Statements are Exempt from the TCPA as "Commercial Speech"**

Having found that Judge's suit implicates the TCPA, we look to whether an exemption applies. *Id.* § 27.005(c); *Round Table Physicians Grp., PLLC v. Kilgore,* 607 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *Toth v. Sears Home Improvement Prods., Inc.,* 557 S.W.3d 142, 152 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The district court found that because of the commercial-speech exemption, Judge's claims were excluded from the TCPA. We agree.

The Texas commercial-speech exemption is found in section 27.010(a)(2), and provides that the TCPA does not apply to:

> a legal action brought against a person primarily engaged in the business of selling [] services, if the statement or conduct arises out of the sale [] of goods, services, [] or a commercial transaction in which the intended audience is an actual or potential buyer or customer;

*Id.* § 27.010(a)(2) (alteration added). According to the test articulated by the Supreme Court of Texas, the firm's letter is exempted from the TCPA's protections if (1) the firm was primarily engaged in the business of selling services, (2) the firm made the statement in its capacity as a seller of those services, (3) the statement arose out of a commercial transaction involving the kind of services the firm provides, and (4) the intended audience of the statement was actual or potential customers of the firm for the kind of services the firm provides. *See Castleman,* 546 S.W.3d at 688. Judge bears the burden of proving the applicability of the exemption by a preponderance of the evidence. *See Hieber v. Percheron Holdings, LLC,* 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). We examine each of the four elements in turn.

**1. The firm was primarily engaged in the business of selling services.**

We hold that the firm was primarily engaged in the business of selling legal services. *See Winstead PC v. USA Lending Grp., Inc.*, No. 12-20-00172-CV, 2021 Tex. App. LEXIS 2106, at *9 (Tex. App.—Tyler Mar. 18, 2021, no pet.) (mem. op.) (holding that law firm doing business in Texas and representing clients satisfies first element of *Castleman* test); *Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181, 191 (Tex. App.—El Paso 2014, no pet.) (same). The record reflects that the firm was formed as a professional corporation by Judge, Kostura, and Putman on December 29, 2003, for the purpose of practicing law and other business as agreed upon. There is no evidence of any business conducted by the firm except representing clients in legal matters. Each client had entered into an agreement identifying the firm as its attorneys; the June letter pertained to those services. We hold this evidence satisfies the requirement that the firm be primarily in the business of selling goods or services.

**2. The firm made the statement in its capacity as a seller of those services.**

We hold that the firm made the disputed statements in the letter while in its capacity as a seller of legal services. Kostura testified by affidavit:

> Each of my acts, complained of by [Judge], was conducted as the business of JKP. [A]ll acts and/or omissions in connection with the June 2020 letters that were mailed to JKP clients, which form the basis of all of John Judge's claims, were taken by me on behalf of JKP, as an officer and director. In sending the June 2020 letters to clients, Stan Putman and I acted as managerial level employees of Judge, Kostura & Putman, P.C.

(alteration added). We hold this evidence satisfies the second prong of the commercial-speech exemption as announced in *Castleman*.

9

Relying in large part on the California Court of Appeals' decision in *Taheri Law Group v. Evans* (2008) 160 Cal. App. 4th 482, 72 Cal. Rptr. 3d 847, the firm argues the commercial-speech exemption should not apply to attorney legal advice. We hold that while there may be sound public policy reasons for excluding legal advice from the definition of "commercial speech," we are bound by the plain language of the Texas statute's definitions and elements, which differ in key respects from California's. In *Taheri,* the court of appeals concluded the California anti-SLAPP commercial-speech statute[4] did not apply to the defendant-attorney's conduct because, among other reasons, "[a] dispute involving a lawyer's advice to a prospective client on pending litigation . . . is fundamentally different from the 'commercial disputes' the Legislature intended to exempt from the anti-SLAPP statute." *Id.* at 491. Unlike California, however, Texas law does not limit its commercial-speech exemption to statements or conduct made for the purpose of obtaining, promoting, or securing sales, leases, or commercial transactions. *See Castleman*, 546 S.W.3d at 688.

"A fundamental constraint on the courts' role in statutory interpretation is that the Legislature enacts the laws of the state and the courts must find their intent in that language and not elsewhere." *Liberty Mut. Ins. Co. v. Adcock,* 412 S.W.3d 492, 493 (Tex. 2013). The Legislature certainly knows how to exclude professional advice from its reach

---

[4] *See* Cal. Civ. Proc. Code § 425.17 which provides in relevant part that the California Anti-SLAPP statute does not apply to causes of action brought against a person primarily engaged in the business of selling or leasing goods or services arising from any statement or conduct by that person if two conditions exist. The first condition requires the following:

> (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, **that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in,** the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.

(emphasis added).

10

when it chooses to do so. For example, when enacting the Texas Deceptive Trade Practices Act, the Legislature expressly crafted an exception for professional services, "the essence of which is the providing of advice, judgment, opinion, or similar professional skill." TEX. BUS. & COM. CODE ANN. § 17.49(c) (West Supp. 2020). Here, the TCPA contains no such restraint. We decline then to construe section 27.010(a)(2) with an interpretive gloss limiting the scope of services in the manner the firm claims.

### 3. The statement arose out of a commercial transaction involving the kind of services the firm provides.

We likewise hold the firm's June letter "ar[ose] out of the sale" of legal services between client and firm regarding the firm's provision of such services. *See id.* § 27.010(a)(2) (requiring that statement "arises out of the sale" of services); *Castleman*, 546 S.W.3d at 689 (same). Kostura testified by affidavit to the following in relevant part:

> Each of the June 2020 letters was addressed and delivered to clients of JKP. Each letter gave legal advice to a JKP client regarding a pending legal matter for which the firm's attorneys had been hired. The June 2020 letters were necessary to protect JKP's clients and to comply with the Texas Disciplinary Rules of Professional Conduct."

The firm argues the letters fail the third prong of the commercial-speech exemption because they do not propose a commercial transaction; all letters but one announce the *termination* of the relationship. We disagree that the Texas commercial-speech exemption is so restrictive.

In *Castleman*, the Supreme Court indeed noted, "the commercial-speech exemption applies only to *certain* communications related to a good, product, or service in the marketplace—communications made not as a protected exercise of free speech by an individual, but as commercial speech which does no more than propose a commercial

11

transaction." *Castleman*, 546 S.W.3d at 690 (internal quotation marks omitted, emphasis in original) (quoting *Posadas de P.R. Assocs. v. Tourism Co. of P.R.*, 478 U.S. 328, 340 (1986)). We disagree with the firm's contention that the *Castleman* court was excluding communications regarding existing contracts from the commercial-speech exemption. Neither the text of the exemption nor the elements stated in *Castleman* limit the commercial-speech exemption to speech or conduct intended to propose a commercial transaction. *Molina Healthcare, Inc. v. State ex rel. Thurmond,* No. 03-20-00077-CV, 2020 Tex. App. LEXIS 9573, at *9 (Tex. App.—Austin Dec. 9, 2020, pet. filed) (mem. op.). Instead, the TCPA simply requires that the statement "arose out of the sale . . . of services . . . or a commercial transaction in which the intended audience is an *actual* or *potential* buyer or customer." *Id.* § 27.010(b) (emphasis supplied); *Round Table Physicians Grp.,* 607 S.W.3d at 886 (noting the language of § 27.010(b) covers statements or conduct arising out of the sale of services to an intended audience of "actual" customers; *viz.* those who have already consummated a commercial transaction with the defendant). Adherence to the text thus evinces legislative intent for the exemption to apply to communications that are broader than advertisements or proposed transactions. So, for example, when assessing the evidence in *Castleman*, our Supreme Court examined whether the petitioner's allegedly defamatory statements arose out of his present sale of goods or services or status as a seller of goods and services. *See* 546 S.W.3d at 690. This analytical step would have been irrelevant if the statute only exempted communications proposing new transactions.

The key issue in *Castleman* pertained to whether the Texas commercial-speech exemption required the disputed communications to pertain to the *defendant's* lease of goods or services. 546 S.W.3d at 68-88. The Supreme Court agreed with this Court in

refusing to apply the California commercial-speech exemption as the lens for interpreting the TCPA, but held that the context of the TCPA's provisions compelled the same conclusion anyway.  *Id.* at 687.  The court's reference to the United States Supreme Court's "propose a commercial transaction" authority was not material to the issue before it; we believe it to be obiter dictum.  *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 399 (Tex. 2016).  We hold that the Legislature intended the commercial-speech exemption to include communications for existing contracts *as well as* proposed future contracts.

Moreover, to the extent that the Legislature intended to track First Amendment jurisprudence when enacting the exemption, we point out that the constitutional commercial-speech doctrine is not as restrictive as the firm proffers.  In *Central Hudson*, the United States Supreme Court noted that the scope of commercial speech was broader than proposed transactions, to include an "expression related solely to the economic interests of the speaker and its audience."  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561 (1980).

The question before this Court is not whether public policy should limit the commercial-speech exemption to advertising or proposed commercial transactions, but whether the statute's text imposes such a limitation.  We find no such limiting language in the Texas exemption.  Because the evidence shows the firm's correspondence to clients arose out of a commercial transaction between client and firm regarding the legal services provided by the firm to the client, we hold the June letter satisfies the third prong of the commercial-speech exemption.

13

**4. The intended audience of the statements were actual clients of the firm for the kinds of services the firm provides.**

Finally, we hold the evidence is sufficient to satisfy the fourth prong – that the intended audience of the communications were actual clients of the firm and for the kinds of services the firm provides. Kostura testified by affidavit: "Each of the June 2020 letters was addressed and delivered to clients of JKP. Each letter involved active or anticipated litigation in a judicial/governmental proceeding. Each letter was from the representing law firm to the client, regarding the case matter." We conclude the pleadings and proof establish the fourth of the *Castleman* factors.

**Does the Attorney Immunity Defense Preempt the Commercial-Speech Exemption?**

The firm argues at length that the attorney immunity defense "blocks application of the commercial speech exemption" under the TCPA. According to this theory, the firm's immunity from suit precludes consideration of the TCPA's commercial-speech exemption. We disagree.

"Attorney immunity is a comprehensive affirmative defense protecting attorneys from liability to non-clients." *Landry's, Inc. v. Animal Legal Def. Fund,* No. 19-0036, 2021 Tex. LEXIS 414, at *9 (May 21, 2021) (internal quotation marks and citation omitted). Attorney immunity "exists to promote loyal, faithful, and aggressive representation by attorneys, which it achieves, essentially, by removing the fear of personal liability." *Youngkin v. Hines,* 546 S.W.3d 675, 682 (Tex. 2018) (internal quotation marks and citation omitted). The Supreme Court of Texas has interchangeably referred to "immunity from suit" and "immunity from liability" when discussing the defense. *Bethel v. Quilling,* 595 S.W.3d 651, 657 (Tex. 2020) ("An attorney is not immune from suit for participating in

14

criminal or 'independently fraudulent activities' that fall outside the scope of the attorney's representation of a client."); *Youngkin*, 546 S.W.3d at 681 (discussing attorney immunity "from liability" in context of TCPA affirmative defense); *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 486 (Tex. 2015) (upholding attorney immunity "from civil liability").[5]

It is unnecessary to step into the thicket regarding whether this difference is substantive or semantic because, however it is framed, attorney immunity is not jurisdictional. *See Hunter v. Marshall,* No. 14-17-00839-CV, 2020 Tex. App. LEXIS 189, at *27 (Tex. App.—Houston [14th Dist.] Jan. 9, 2020, no pet.) (mem. op.) ("Attorney immunity, however, is not a jurisdictional issue."); *Diogu v. Aporn,* No. 01-17-00392-CV, 2018 Tex. App. LEXIS 4977, at *12 (Tex. App.—Houston [1st Dist.] July 3, 2018, no pet.) (mem. op.) ("[T]he attorney immunity defense is an affirmative defense; it is not a jurisdictional issue.").[6]

The TCPA, then, determines the course of our analysis. Because attorney immunity is an affirmative defense, it is heard in a TCPA matter only after the plaintiff is required to present clear and specific evidence of each cause of action. *See* § 27.005(d); *Youngkin,* 546 S.W.3d at 681. Because we have concluded that the firm's statements are exempt from the TCPA, it is not necessary to assess the evidence regarding the firm's

---

[5] Following the Supreme Court of Texas's holding in *Cantey Hanger*, the federal court of appeals originally recharacterized the holding as granting attorney immunity "from suit." *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016) (comparing attorney immunity to judicial and prosecutorial immunity). In a more recent appeal involving the same appellant and many of the same issues, however, the Fifth Circuit described Texas as recognizing attorney "immunity from liability." *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 505 (5th Cir. 2019).

[6] The Supreme Court of Texas recently issued two detailed opinions concerning the attorney immunity defense. *Haynes & Boone, LLP v. NFTD, LLC,* No. 20-0066, 2021 Tex. LEXIS 423 (May 21, 2021); *Landry's, Inc. v. Animal Legal Def. Fund,* No. 19-0036, 2021 Tex. LEXIS 414 (May 21, 2021). In neither case did the court analyze the defense as a jurisdictional bar to suit.

attorney immunity defense. We express no opinion regarding whether the attorney immunity defense will affect the outcome of later portions of this litigation.

**Conclusion**

Having concluded the district court did not err in denying the firm's TCPA motion to dismiss based on the commercial-speech exemption, we affirm its order. TEX. R. APP. P. 43.2(a).

Lawrence M. Doss
Justice

Quinn, C.J., dissenting.[7]

---

[7] Chief Justice Quinn dissents on the following ground:

I respectfully dissent from the majority for the following reason. I preface that reason with my observation that the majority correctly construes the statute in play as it was written by our Texas legislature. Nevertheless, our Supreme Court expressed the following in *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684 (Tex. 2018) (per curiam):

> Thus, the commercial-speech exemption applies only to *certain* communications related to a good, product, or service in the marketplace—communications made not as a protected exercise of free speech by an individual, but as "commercial speech ***which does 'no more than propose a commercial transaction***.'"

*Id.* at 690 (quoting *Posadas de P.R. Assocs. v. Tourism Co. of P.R.,* 478 U.S. 328, 340, 106 S. Ct. 2968, 92 L. Ed. 2d 266 (1986)) (emphasis added). I feel constrained to abide by what it wrote, even though I disagree with the writing. So, I dissent from the majority at bar and invite the Supreme Court to clarify whether its words in *Castleman* control this and future disputes.